IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INTERDIGITAL COMMUNICATIONS,  :        CIVIL ACTION
CORP., ET AL.,                :
                             :
          Plaintiffs,         :        NO.  03-6082
                             :
          v.                  :
                             :
FEDERAL INSURANCE COMPANY     :
                             :
          Defendant.          :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        OCTOBER 3, 2005

        Plaintiffs InterDigital Communications Corporation and
InterDigital Technology Corporation (collectively,
"InterDigital") brought this action against Federal Insurance
Company ("Federal") seeking a declaration that the contract in
which InterDigital agreed to reimburse Federal for litigation
expenses paid by Federal, as InterDigital's insurer, to defend
InterDigital in its litigation with Ericsson Radio Systems and
Ericsson GE Mobile Communications, Inc. (collectively,
"Ericsson") is unenforceable for lack of consideration.

        InterDigital alleges that the "Litigation Expense and
Reimbursement Agreement" ("Reimbursement Agreement") lacks
consideration because, at the time it entered into the
Reimbursement Agreement with Federal, Federal had a preexisting
legal duty to provide such a defense under the insurance contract
between the parties.  InterDigital further contends that

Federal's relinquishment of its claim to reimbursement of fees for attorneys and litigation expenses associated with uncovered claims is not valid consideration for the Reimbursement Agreement.  See Complaint. at ¶¶ 52-53 (doc. no. 1). InterDigital seeks a declaration that it is not obligated to reimburse Federal for monies Federal paid for InterDigital's defense in the Ericsson litigation.

In the alternative, if the Court finds that the Reimbursement Agreement is valid and enforceable, InterDigital seeks a declaration that: (1) Federal is entitled to reimbursement under the formula in the Agreement based only on funds received from Ericsson relating to the patents at issue (and excluding any royalty payments made to InterDigital by entities that were not part of the litigation), and (2) that the amount to be reimbursed under the Reimbursement Agreement is considerably less than the amount demanded by Federal.  See Complaint. at ¶¶ 55 & 58 (doc. no. 1).

InterDigital also seeks damages for Federal's alleged breach of the insurance contract and for bad faith pursuant to 42 Pa. Cons. Stat. Ann. § 8371.[1]  The Court has jurisdiction

---

[1] InterDigital alleges that Federal breached the parties' insurance contract by refusing to reimburse InterDigital for its attorneys' fees above $240, and then $200 per hour (both rates being lower than the actual rate charged by InterDigital's attorneys), and that Federal had no good faith basis for doing so.

pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.  The action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

Before the Court is Federal's motion to dismiss InterDigital's complaint and to compel arbitration.  Federal contends that InterDigital's complaint should be dismissed because, as a matter of law, the Reimbursement Agreement, requiring the parties to arbitrate fee disputes, is enforceable under Pennsylvania law,[2] even if not supported by consideration. Specifically, Federal argues that under Pennsylvania's Uniform Written Obligations Act ("UWOA"), the Reimbursement Agreement is enforceable because (1) it contains an "additional express statement" of the intent of the parties to be bound by the Reimbursement Agreement, as required under the UWOA; and (2) the exchange of promises in the Reimbursement Agreement clearly expressed the intent of the parties to be bound.  Therefore, Federal contends that, because the agreement is binding, regardless of whether the consideration recited in the Reimbursement Agreement is valid, any dispute between the parties as to the amount of the reimbursement to be paid by InterDigital to Federal should be arbitrated pursuant to the arbitration

_____

[2] According to its terms, the Reimbursement Agreement is to be construed according to Pennsylvania law.  See Complaint, Ex. E, ¶ 18 (doc. no. 1).

-3-

clause in the Reimbursement Agreement.

In response, Interdigital argues that the Reimbursement Agreement is not supported by consideration and it is not covered by the UWOA.  In any event, Interdigital argues that Federal has not complied with the terms of the Reimbursement Agreement requiring a meeting between representatives of Interdigital and Federal before seeking arbitration.

For the reasons that follow, the Court concludes that, even assuming the Reimbursement Agreement is not supported by consideration, it is enforceable under the UWOA.  Because the parties agreed to arbitrate the remaining dispute involving the amount that Federal should be reimbursed (if any), the Court concludes that arbitration should be compelled on that basis.[3] Additionally, the Court concludes that whether the parties satisfied all conditions precedent to arbitration, if any, is a procedural issue to be decided by the arbitrator.

I.    FACTS

The instant dispute concerns a Commercial General Liability Policy (the "Policy") issued by Federal to

---

[3]Because InterDigital's breach of contract and bad faith claims are undermined by the terms of the Reimbursement Agreement, in which the parties agreed on the hourly rate that Federal would pay for InterDigital's counsel, and the Court finds that the Reimbursement Agreement is valid and enforceable, Count II (Breach of Contract) and Count III (Bad Faith in Violation of 18 Pa. Cons. Stat. Ann. § 8371) will also be dismissed.

-4-

InterDigital, in consideration for premium paid, pursuant to
which, in relevant part, Federal was obligated: (1) to cover
damages InterDigital became obligated to pay by reason of
liability for, inter alia, personal or advertising injury, and
(2) to defend InterDigital with respect to any claim or suit
against InterDigital seeking, inter alia, damages for personal or
advertising injury.  See Complaint, Ex. A (doc. no. 1).  Between
September 1993 and May 2003, InterDigital was involved in
litigation with Ericsson, with respect to public statements made
by InterDigital that Ericsson was infringing on InterDigital's
patents.[4]  While reserving its right to reimbursement for any
uncovered expenses, Federal acknowledged its obligation under the
policy to defend InterDigital in the Ericsson litigation.

      As contemplated under the Policy, Federal reimbursed
InterDigital for its attorneys' fees and litigation expenses
throughout the Ericsson litigation.  On February 9, 2000, while
the Ericsson litigation was still ongoing, InterDigital entered
into an agreement with Federal, entitled the "Litigation Expense
and Reimbursement Agreement," in which InterDigital promised
that, in the event of a court award or settlement in the Ericsson

---

[4] Ericsson sought declaratory and monetary relief based upon
several causes of action, at least one of which alleged
defamation and commercial disparagement that constituted an
advertising injury under the Policy.  InterDigital filed a
counterclaim alleging, inter alia, patent infringement.
InterDigital alleges that all claims between the parties involved
the same threshold legal issue, the validity of InterDigital's
patents.

litigation, it would reimburse Federal for the litigation expenses.[5]

The Reimbursement Agreement, in part, provides: (1) Federal would continue to reimburse InterDigital for attorneys' fees and other litigation expenses in the same manner as Federal had been doing;[6] (2) InterDigital was required to reimburse Federal's defense costs (even those paid before the agreement) by paying Federal 9% of the first $50 million of the "agreed-upon settlement" for the patent claims and 10% of everything above $50 million of the "agreed-upon settlement" for the patent claims in the Ericsson litigation;[7] and (3) if Federal does not believe it will be fully reimbursed within four years from the date of the settlement, Federal could seek additional reimbursement from InterDigital.  <u>See</u> Complaint, Ex. E, ¶ 6(c) (doc. no. 1).  The Reimbursement Agreement also states that the consideration for the agreement is "the reciprocal trade off, and/or compromise of

---

[5] InterDigital claims that the Reimbursement Agreement was precipitated by Federal's insistence that (1) it was entitled to seek reimbursement of fees for attorneys and litigation expenses associated with the defense of claims that did not fall within InterDigital's insurance coverage for advertising injuries under the Policy, and (2) it planned to seek reimbursement prior to InterDigital receiving settlement proceeds or an award from Ericsson.

[6] Except that Federal would only reimburse InterDigital for attorneys's fees calculated at the maximum rate of $200 per hour for services performed after April 1, 1999.  <u>See</u> Complaint, Ex. E, ¶¶ 2,3 (doc. no. 1).

[7] <u>See</u> Complaint, Ex. E, ¶ 6(a) (doc. no. 1).

the parties' respective rights which have been reserved or
asserted with regard to funding, allocation, apportionment and
reimbursement of litigation expenses with regard to the [Ericsson
litigation]" and the certainty derived from the agreement.
Complaint, Ex. E, Recital K (doc. no. 1).

         The Ericsson litigation settled.  Thereafter, Federal
demanded full reimbursement in the amount $27,886,576.64, which
represented the amount Federal had paid to InterDigital toward
InterDigital's litigation expenses.  InterDigital contended that
it was not obligated to reimburse Federal for litigation expenses
claiming the Reimbursement Agreement was unenforceable for lack
of consideration.[8]  After the dispute arose, the parties met once
to discuss settlement of the case.  There is a dispute whether
this one meeting satisfied the required meeting provided for in
the Reimbursement Agreement.[9]  Thereafter, pursuant to paragraph
6(c)(ii) of the Reimbursement Agreement, Federal formally
demanded arbitration of its claim for reimbursement.  In turn,
InterDigital filed the instant suit.


II.  DISCUSSION

_____

        [8] InterDigital reimbursed Federal, in part, for litigation
expenses in the amount of $157,000.

        [9] InterDigital alleges that this meeting took place subject
to its express reservation that the meeting would not be part of
the procedures set forth in the Reimbursement Agreement. See
Plaintiffs's Memorandum of Law in Opposition to Defendant's
Motion to Dismiss, Ex. 3 (doc. no. 12).

A.    Standard for a Motion to Compel Arbitration

Under Pennsylvania law, the parties must submit claims to arbitration if the parties entered into an agreement to arbitrate and the dispute falls within the scope of the agreement.  Messa v. State Farm Ins. Co., 641 A.2d 1167, 1168 (Pa. Super. Ct. 1994); Rocca v. Pennsylvania Gen. Ins. Co., 516 A.2d 772, 773-74 (Pa. Super. Ct. 1986).  Once a court determines that a valid agreement to arbitrate exists and that the dispute falls within the agreement, pursuant to the Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. Ann. §§ 7301-7320, the court must compel the parties to arbitration.  Messa, 641 A.2d at 1168.[10]

Additionally, motions to compel arbitration are reviewed, in the first instance, under the well-settled summary judgment standard set forth in Fed. R. Civ. P. 56(c).  Bellevue

---

[10] Although not argued by the parties, whether a statement that comports with the UWOA acts as a valid substitute for consideration, making an agreement to arbitrate enforceable regardless of consideration, presents a question of substantive arbitrability which is an issue for the court to determine in the first instance.  See Ross Dev. Co. v. Advanced Bldg. Dev., Inc., 803 A.2d 194, 196 (Pa. Super. Ct. 2002) (finding that whether the parties validly agreed to arbitrate, commonly referred to as "substantive arbitrability," is generally a question for the courts and not arbitrators, while resolution of procedural questions is left to the arbitrator).  "A gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)(citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-946 (1995) (holding that a court should decide whether an arbitration agreement bound parties who did not sign the agreement)).

<u>Drug Co. v. Advance PCS</u>, 333 F. Supp. 2d 318, 322 (E.D. Pa. 2004).  Movants must prove through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . that there is no genuine issue of material fact and that [they are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion to compel arbitration, the Court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party.  <u>Bellevue Drug</u>, 333 F. Supp. 2d at 322.

      B.    <u>Is the Reimbursement Agreement Enforceable?</u>

      Both parties have submitted briefs that discuss whether the consideration purported to be exchanged by the Reimbursement Agreement is adequate and whether there was any other consideration exchanged by the parties that could support the Reimbursement Agreement.  However, the Court need not determine those issues because it finds on the alternative basis argued by Federal that, under the UWOA, the Reimbursement Agreement is binding even absent consideration.[11]

---

[11] The Court also requested supplemental briefs from both parties addressing the impact of the Supreme Court's decision in <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395 (1967), on the forum and calculus of this case.  Both parties agree, as does the Court, that in these circumstances, a Court, and not an arbitrator, must decide whether an enforceable arbitration agreement exists.  <u>See</u> <u>Sandvik AB v. Advent Int'l Corp.</u>, 220 F.3d 99, 112 (3d Cir. 2000) ("[W]hen the very

The UWOA provides that:

A written release or promise, hereafter made
and signed by the person releasing or
promising, shall not be invalid or
unenforceable for lack of consideration, if
the writing also contains an additional
express statement, in any form of language,
that the signer intends to be legally bound.

33 P.S. § 6.[12]  Under the UWOA, a written agreement may not be

avoided for lack of consideration if it contains a provision

expressing the intent of the parties to be legally bound by the

agreement.  See Laudig v. Laudig, 624 A.2d 651, 654 (Pa. Super.

Ct. 1993).  Instead, the statement of the intent of the parties

to be legally bound acts as "a valid substitute for

consideration" for the agreement.  Fedun v. Mike's Café, Inc.,

204 A.2d 776, 781 (Pa. Super. Ct. 1964), aff'd 213 A.2d 638 (Pa.

---

existence of . . . an agreement is disputed, a district court is
correct to refuse to compel arbitration until it resolves the
threshold question of whether the arbitration agreement
exists."); Giannone v. Ayne Inst., 290 F. Supp. 2d 553, 560-61
(E.D. Pa. 2003) (holding that an arbitrator may decide a claim
that a contract is voidable, while a court must decide whether a
contract is void ab initio).  Here, InterDigital claims that the
Reimbursement Agreement is void, not merely voidable, and thus,
should be decided by the Court.  Additionally, the arbitration
clause in the Reimbursement Agreement does not encompass
challenges to the validity of the agreement, as challenged here.
Rather, the arbitration clause is limited only to determinations
as to the amount of reimbursement to Federal, if any.

[12] Professor Williston, the drafter of the UWOA, declared
that the purpose of the UWOA was to make the law "substantially
the same as it was when seals were in force, so far as the
doctrine of consideration is concerned, except that in lieu of
the formality of the seal, the formality of this statement is
substituted."  Fed. Deposit Ins. Corp. v. Barness, 484 F. Supp.
1134, 1148 (E.D. Pa. 1980)(citations omitted).

1965).

      The requirements of the UWOA are met by "an additional express statement, <u>in any form of language</u>, that the signer intends to be bound."  33 Pa. Cons. Stat. Ann. § 6 (emphasis added).  For example, in <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 806 A.2d 936, 945 (Pa. Commw. Ct. 2002), <u>rev'd on other grounds</u>, 854 A.2d 425 (Pa. 2004), the court found that an agreement containing the statement, "This agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns," when signed by the parties, expressed an acknowledgment of intent to be bound.  <u>Id.</u> Similarly, in <u>Kronz v. Cech (In re Romano)</u>, 175 B.R. 585 (Bankr. W.D. Pa. 1994), the Bankruptcy Court for the Western District of Pennsylvania found the language,  "The covenants, conditions and agreements contained in this Mortgage shall bind, and the benefits thereof shall inure to the respective parties hereto and their respective heirs, executors, administrators, successors and assigns as the case may be," to be a clear expression of intention to abide by the provisions of the mortgage, thereby satisfying the requirements of the UWOA.  <u>Id.</u> at 593.

      The provisions at issue in both <u>Yocca</u> and <u>Kronz</u> are nearly identical to the language contained in the Reimbursement Agreement.  Section 13 of the Reimbursement Agreement signed by InterDigital and Federal (collectively referred to as the "Contracting Parties") stated:

-11-

> The Contracting Parties understand and agree
> that the agreements, undertakings, acts and
> other things done or to be done by each of
> the Contracting Parties in <u>this Agreement</u>
> <u>shall run to and be binding upon the</u>
> <u>respective Contracting Parties</u>, and their
> respective successors and assigns, which with
> respect to Insured [InterDigital] shall
> specifically include any Successor Entity.

Complaint, Ex. E, ¶ 13 (doc. no. 1) (emphasis added).  Upon

review of the clear and unambiguous language of the Agreement,

the Court concludes that the language, "this agreement shall run

and be binding upon the respective Contracting Parties," is an

additional express statement and is the form of language that

clearly expresses an intent to be bound.  <u>See, e.g.</u>, <u>Kay v. Kay</u>,

334 A.2d 585, 586 n.1, 587 (Pa. 1974)(finding that the statement

in a spousal support agreement that "HUSBAND agrees to be legally

bound . . . . HUSBAND further agrees and legally binds himself

. . . ." sufficiently stated the husband's intention to be

legally bound under the UWOA); <u>Morgan's Home Equip. Corp. v.</u>

<u>Martucci</u>, 136 A.2d 838, 841, 845 n.12 (Pa. 1957)(finding that an

employment agreement which contained the statement "I intend to

be legally bound hereby," is a statement of intent to be bound

within the meaning of the UWOA and has the same effect in

importing consideration as a seal on an agreement); <u>Fasco, A. G.</u>

<u>v. Modernage, Inc.</u>, 311 F. Supp. 161, 164 (W.D. Pa.

1970)(concluding that an agreement stating "[w]e the undersigned

agreed to be severally liable for the obligation of [the

defendant]," was a clear and formal expression of intention to be

legally bound by the agreement, thereby satisfying the UWOA).

The cases cited by InterDigital to the contrary are distinguishable.  The language in those cases, unlike the present case, do not contain additional language that either expressly state or objectively manifest an intention to be bound.  See Barness 484 F. Supp. at 1147-48 (finding that the statement "the Undersigned . . . promises to pay to the order of Centennial Bank" was not an additional express statement within the meaning of the statute); Gershman v. Metro. Life Ins. Co., 176 A.2d 435, 436-37 (Pa. 1962)(finding that the words "[a]pproved by" followed by obligor's signature did not satisfy the Act); Fedun, 204 A.2d at 780-81 (finding that the statement "[w]e . . . release you from all obligations under the Lease . . . and will not hold you responsible whatsoever under the Lease . . ." did not constitute the additional express statement required by the UWOA).[13]

InterDigital also contends that the UWOA is not

---

[13] Federal further contends that, even assuming that no consideration was exchanged under the Reimbursement Agreement, the agreement is valid and enforceable pursuant to the UWOA because it contains an exchange of promises (i.e., InterDigital's promise to reimburse Federal for litigation expenses if it received a settlement from Ericsson and Federal's promise to fund InterDigital's litigation even if all potentially-covered claims were stricken from the lawsuit).  See Linder v. Inhalation Therapy Servs., Inc., 834 F.2d 306 (3d Cir. 1987)(holding that, under the UWOA, the exchange of promises between the parties in the written amendatory agreement expressed a clear intention to bind both parties).  Because the Court finds that the Reimbursement is enforceable based on the parties express statement of their intent to be bound, the Court need not determine the applicability of Linder to the instant case.

applicable to a contract, such as the Reimbursement Agreement, in
which the parties bargained for consideration but the
consideration is illusory.  For support, InterDigital points to
the language in In re Commonwealth Trust Co. of Pittsburgh, 54
A.2d 649, 652 (Pa. 1947), which states that, "[i]n the absence of
any evidence to the contrary, an agreement under seal imports
consideration.  When, however, the agreement itself reveals the
insufficiency or lack of consideration, the rule will not be
applied to the detriment of the promisor."  Analogizing
requirements under the UWOA with agreements signed under seal,
InterDigital argues that because the Reimbursement Agreement is
not supported by any consideration, under the rule of
Commonwealth Trust, the Court should not enforce the
Reimbursement Agreement.  The analogy is not on point.

Even assuming that no consideration passed under the
Reimbursement Agreement, no Pennsylvania case has extended
Commonwealth Trust to agreements enforceable under the UWOA, as
suggested by Plaintiffs.  To the contrary, as discussed above,
Pennsylvania cases have emphasized that contracts containing "an
additional express statement" of the intent of the parties to be
bound are enforceable whether or not consideration exists for the
agreement.  See, e.g., Kay, 334 A.2d at 587 ("Under the Uniform
Written Obligations Act . . . the absence of consideration does
not render the agreement unenforceable where [a statement of the
intent of the parties to be bound is] made part of the

-14-

contract."); <u>Laudig</u>, 624 A.2d at 655 (finding that, because an agreement contained a clause stating the intent of the parties to be legally bound, the agreement "is enforceable even without consideration under the Uniform Written Obligations Act"); <u>Yocca</u>, 806 A.2d at 945 (agreeing with the trial court's finding that it was unnecessary to determine if the additional terms of an agreement were supported by consideration because the agreement contained a statement binding the parties pursuant to the UWOA).[14]

In any event, the holding in <u>Commonwealth Trust</u> is inapplicable here because it is limited to cases involving mutual mistake.  In <u>Commonwealth Trust</u>, the agreement of sale at issue was premised on a mutual mistake of fact, i.e., that the seller (as a fiduciary) was legally obligated to accept a higher bid or offer received prior to the Orphan's Court's approval of the agreement of sale.  <u>Commonwealth Trust</u>, 54 A.2d at 652.  Because

_____

[14] In InterDigital's supplemental brief, it asserts that the contractual language in the Reimbursement Agreement does not have the same binding effect of the contractual language in <u>Yocca</u>, even though the language is nearly identical, because the provision in the Reimbursement Agreement is contained under the heading "Successors and Assigns, while the provision in <u>Yocca</u> fell under a heading entitled "Binding Effect."  This distinction is without consequence.  Despite the heading, the language of the Reimbursement Agreement is clear—the provision binds not only successors and assigns, but also is "binding upon the respective Contracting Parties."  Moreover, Paragraph 13(a) of the Reimbursement Agreement specifically states that headings are insignificant: "All headings contained herein are only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement."

no such obligation existed and the seller was already legally
obligated to sell to the defendant-buyer through a previous court
order, the court found there was no consideration which supported
the terms of the agreement of sale allowing the seller to rescind
if he received a higher offer.  Id.  Holding that a seal will not
import consideration where it is revealed that no consideration
is present, the Pennsylvania Supreme Court reversed the lower
court's enforcement of the agreement of sale.  Id.  In so
holding, the court cited Jeffers v. Babis, 155 A. 878, 878-79
(Pa. 1931), a case in which the defendant had essentially engaged
in fraud in order to obtain an agreement by the plaintiffs to pay
defendant a $3,000 commission for a sale of property after the
sale was already completed.  In both cases, the court concluded
that, even though the contract was under seal, it would not
enforce the agreement because there was no consideration
involved.

        The conclusion that the court's holding in Commonwealth
Trust is limited to cases of mutual mistake is explained by
Justice Maxey's concurring opinion in Commonwealth Trust. There,
Justice Maxey wrote: "It is true that a seal 'imports
consideration' but it is equally true that it does not import
unchallengeable validity to a contract founded on a mutual
mistake."  Commonwealth Trust, 54 A.2d at 656 (emphasis added).
Because both parties had been mistaken as to their legal
obligations at the time the agreement of sale was signed, Justice

-16-

Maxey found that, despite the presence of the seal, the contract should not be enforced.  Id. at 656-57; see also Thrasher v. Rothrock, 105 A.2d 600, 604 (Pa. 1954)(affirming, per curiam, a lower court decision concluding that the Commonwealth Trust decision was not applicable because the contract at issue was not founded on mutual mistake).[15]  Commonwealth Trust, thus, is not helpful to Interdigital in this case.

    C.   Should the Parties be Compelled to Arbitrate?

       InterDigital next argues that, even if the Reimbursement Agreement is enforceable, the Court should not compel the parties to arbitrate at this time because the parties have not yet satisfied the meeting requirement set forth in the Reimbursement Agreement.  The Agreement provides:

> If the combination of all of the foregoing is not reasonably projected to fully reimburse Federal within those four (4) years, Federal may, at its option, seek additional reimbursement from the Insureds during which time a representative of the Insureds and Federal, each of which having the authority to bind their respective entities, shall

---

[15] Interdigital also claims that the UWOA has no application to any agreement in which the parties recite in the agreement the consideration purported to be exchanged.  Plaintiffs cite an Iowa case for this proposition.  See North v. Manning Trust & Sav. Bank, 169 N.W.2d 780 (Iowa 1969).  However, Manning Trust was overruled.  Hubbard Milling Co. v. Citizens State Bank, 385 N.W.2d 255, 259 (Iowa 1986) (holding that the defense of failure of lack of consideration is not precluded from being raised merely because the parties recited consideration in the agreement).  Additionally, the rule Plaintiff proposes has never been applied in Pennsylvania.  Therefore, the Court concludes that the Reimbursement Agreement is enforceable under the UWOA even though the agreement may cite consideration intended to be exchanged.

> meet.  If the Insureds and Federal cannot
> agree on a resolution, the matter will be
> submitted to arbitration, pursuant to
> Pennsylvania's Uniform Arbitration Act. . . .

Complaint, Ex. E, ¶ 6(c)(ii).  In other words, InterDigital

argues that, a formal meeting was contemplated by the arbitration

provision and such a meeting did not occur in this case.

Pursuant to Pennsylvania's Uniform Arbitration Act,[16]

the determination of whether a matter is subject to arbitration

is within the jurisdiction of the court.  See 42 Pa. Cons. Stat.

Ann. § 7304(a); Ross, 803 A.2d at 196.  In a proceeding to compel

arbitration, as a threshold matter, the court must address

whether the parties agreed to arbitrate and the scope of the

agreement between the parties.  Ross, 803 A.2d at 196-97.  Once

the court determines that there is an agreement to arbitrate and

that the dispute falls within the scope of the arbitration

clause, resolution of procedural questions, such as whether the

invocation of arbitration was proper or timely, is left to the

arbitrator.  Id. at 196.

In the instant case, the parties agree that under

section 6(c)(ii) of the Reimbursement Agreement, they agreed to

arbitrate disputes concerning the amount to be reimbursed to

---

[16] The Reimbursement Agreement states that the agreement of
the parties to arbitrate is governed by Pennsylvania's Uniform
Arbitration Act, 42 Pa. Cons. Stat. Ann. §§ 7301-7320.  See
Complaint, Ex. E, ¶ 6(c)(ii) (doc. no. 1).

Federal by InterDigital.[17]  InterDigital has not argued that its
claims with respect to the amount of Federal's reimbursement do
not fall within the scope of the agreement to arbitrate.  Rather,
InterDigital argues that arbitration is not timely because the
parties have not satisfied a condition precedent that the parties
meet to resolve the dispute prior to submitting the matter to
arbitration.  See Complaint, Ex. E, ¶ 6(c)(ii).[18]

Specifically, InterDigital contends that the meeting
between the parties on September 15, 2003, to discuss settlement
does not satisfy the condition precedent because InterDigital
attended the meeting under the express reservation that the
meeting was excluded from procedures required under the

-------

[17] See Defendant's Memorandum of Law in Support of Motion to
Dismiss, at p. 22 (doc. no. 5); Plaintiffs's Memorandum of Law in
Opposition to Defendant's Motion to Dismiss, at p. 30 (doc. no.
12).

[18] The agreement provides,

> [i]f the combination of all the foregoing is
> not reasonably projected to fully reimburse
> Federal within those four (4) years, Federal
> may, at its option, seek additional
> reimbursement from the Insureds during which
> time a representative of the Insureds and
> Federal, each of which having the authority
> to bind the respective entities, shall meet.
> If the Insureds and Federal cannot agree on a
> resolution, the matter will be submitted to
> arbitration, pursuant to Pennsylvania's
> Uniform Arbitration Act, before a single
> arbitrator approved by Federal and the
> Insureds . . . .

Complaint, Ex. E, ¶ 6(c)(ii) (doc. no. 1).

-19-

Reimbursement Agreement.  See Plaintiffs's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Ex. 2 (doc. no. 12).

Under Pennsylvania law, the procedural issue of whether a condition precedent to arbitration has been met is for an arbitrator to decide.  See Ross, 803 A.2d at 197 (finding that the issue of whether a defendant's failure to satisfy the conditions precedent in the contract, i.e., whether the claims in a construction contract were previously presented to the architect are determined in arbitration); see also Shaler Area Educ. Ass'n. v. Shaler Area Sch. Dist., 433 A.2d 168, 170 (Pa. Commw. Ct. 1981)(determining that the issue of whether the teachers had complied with the steps required by the collective bargaining agreement was for the arbitrator to decide).

Accordingly, given that the parties have formally agreed to arbitrate their dispute and the dispute falls within the scope of the arbitration agreement, the Court concludes that the issue of whether or not the September 15, 2003 meeting satisfied a condition precedent to arbitration is procedural and is to be determined by the arbitrator.[19]

---

[19]Lastly, InterDigital argues that arbitration should not be compelled because the Reimbursement Agreement does not state that arbitration of the dispute is "final and binding," and hence any decision rendered by arbitrators would only be advisory.  See Orlando v. Interstate Container Corp., 100 F.3d 296, 300 (3d Cir. 1996)(finding that, because an arbitration award in a grievance proceeding was not final because the arbitration clause did not use the words "final" or "binding," review of the merits of the grievance by the court is proper).  Even assuming that the decision of the arbitrator in this case would not be binding because the Reimbursement Agreement does not so state,

III. CONCLUSION

For the foregoing reasons, Federal's motion to compel arbitration will be granted.  Federal's motion to dismiss the complaint will be denied, this civil action shall be stayed, pursuant to 42 Pa. Cons. Stat. Ann. § 7304(d),[20] and the case shall be placed in suspense.  An appropriate order follows.

---

InterDigital cites no support for the proposition that the court could refuse to compel arbitration on that basis.  To the contrary, under Pennsylvania's Uniform Arbitration Act, once the court determines that there is an agreement to arbitrate and that the controversy falls within the scope of that agreement, the controversy must be submitted to arbitration.  42 Pa. Cons. Stat. Ann. § 7304(a); Santiago v. State Farm Ins. Co., 683 A.2d 1216, 1217 (Pa. Super. 1996).  There is no mention in the Act that the provision is applicable only when the arbitrator's decision is final.  Whether or not the arbitrator's resolution of the instant dispute is binding arbitration or subject to judicial review at a later date, and if so, to what degree, need not be considered by the Court at this time.

[20]Pursuant to Pennsylvania law, "[a]n action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section."  42 Pa. Cons. Stat. Ann. 7304(d).

```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


INTERDIGITAL COMMUNICATIONS,  :         CIVIL ACTION
CORP., ET AL.,                :
                             :
            Plaintiffs,       :         NO.  03-6082
                             :
       v.                     :
                             :
FEDERAL INSURANCE COMPANY     :
                             :
            Defendant.        :
```

                               ORDER

        **AND NOW**, this **3rd** day of **October, 2005,** it is hereby

**ORDERED** that the defendant's motion to dismiss the complaint and

compel arbitration (doc. no. 16) is **GRANTED in part and DENIED in**

**part.**

        **IT IS FURTHER ORDERED** that the dispute shall be

**SUBMITTED TO ARBITRATION** in accordance with the terms of the

Reimbursement Agreement.

        **IT IS FURTHER ORDERED** that the case is **STAYED** and is

**PLACED IN SUSPENSE.**


        **AND IT IS SO ORDERED.**


                                _____
                                **EDUARDO C. ROBRENO,      J.**