IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INTERDIGITAL COMMUNICATIONS    :
CORP. ET AL.,                  :
                               :       CIVIL ACTION
          Plaintiffs,          :       NO.  03-6082
                               :
          v.                   :
                               :
FEDERAL INSURANCE COMPANY,     :
                               :
          Defendant.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 24, 2008


          The issue presented to the Court is whether an
arbitrator exceeded her powers under the Pennsylvania Uniform
Arbitration Act ("PUAA") by fashioning an award pursuant to a
term of the agreement between the parties that the plaintiffs now
claim was not properly subject to arbitration.  The Court holds
that the arbitrator did not exceed her powers under the PUAA in
this case; the arbitration award will be confirmed.


I.   BACKGROUND

          Plaintiffs InterDigital Communications Corporation and
InterDigital Technology Corporation (collectively,
"InterDigital") were insured by Defendant Federal Insurance
Company ("Federal").  The insured, InterDigital, agreed to
reimburse the insurer, Federal, for litigation expenses paid by
Federal to defend InterDigital in its litigation with Ericsson

Radio Systems and Ericsson GE Mobile Communications, Inc. ("Reimbursement Agreement").  Section 6 provided the method for determining the amount of Federal's reimbursement.  Section 6(c) provides, in part, that "[i]f the Insureds [InterDigital] and Federal cannot agree on a resolution, the matter will be submitted to arbitration, pursuant to Pennsylvania's Uniform Arbitration Act, before a single arbitrator approved by Federal and the Insureds."

InterDigital brought this action seeking a declaratory judgment that the Reimbursement Agreement was unenforceable for lack of consideration.  InterDigital contended that the Reimbursement Agreement lacked consideration because, at the time the Agreement was entered into, Federal had a preexisting legal duty to provide such a defense under the insurance contract between the parties.

In a memorandum dated October 3, 2005, this Court held that, even assuming the Reimbursement Agreement was not supported by consideration, it was enforceable under Pennsylvania's Uniform Written Obligations Act ("UWOA"), 33 Pa. Stat. Ann. § 6 (2008), because section 13 of the agreement constituted an "additional express statement" of the intent of the parties to be bound.  See InterDigital Commc'ns Corp. v. Federal Ins. Co., 392 F. Supp. 2d 707, 713 (E.D. Pa. 2005) (Robreno, J.).  The Court then compelled arbitration and stayed the case pending the outcome of the

-2-

arbitration.

     The case proceeded to arbitration and on May 22, 2007, Judge Welsh,[1] acting as arbitrator in the case, issued a Final Arbitration Award that decided Federal's claims in favor of Federal and against InterDigital.  Federal was awarded $19,675,656.00.  In addition to this amount, Federal is to receive 10% of any additional payments that InterDigital receives as a result of an ongoing audit of Sony Ericsson's payment obligations to InterDigital.

     Federal has now returned to this Court, moving that the stay be lifted and the arbitration award confirmed.  InterDigital has filed a cross-motion to vacate a portion of the arbitration award and to stay the confirmation of the remaining portion of the award pending adjudication of InterDigital's recoupment defense.  InterDigital contends that a portion of the award should be vacated because Judge Welsh, the arbitrator, exceeded her powers when fashioning an award pursuant to section 6(a) of the Reimbursement Agreement, which, according to InterDigital, was not subject to arbitration and therefore was not properly before Judge Welsh.

-----

     [1]    Diane M. Welsh is a retired magistrate judge who served in the Eastern District of Pennsylvania.  She was appointed by the court from a list of potential arbitrators submitted by the parties.

II.  DISCUSSION

    A.  <u>Choice of Law</u>

       A federal court sitting in diversity, as in this case, applies state substantive law.  <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78-80 (1938).  However, "when construing or enforcing an arbitration clause, even a federal court sitting in diversity might be obliged to apply federal law if the matter falls within the ambit of the Federal Arbitration Act [("FAA")], 9 U.S.C. §§ 1-16."  <u>State Farm Mut. Auto. Ins. Co. v. Coviello</u>, 233 F.3d 710, 713 n.1 (3d Cir. 2000).  Generally, the FAA governs the construction and enforcement of an arbitration agreement if the agreement is connected to a transaction involving interstate commerce.  <u>Id.</u> (citing <u>PaineWebber Inc. v. Hartmann</u>, 921 F.2d 507, 510 (3d Cir. 1990)).  Parties may avoid the application of the FAA by specifying that an agreement is governed by a particular state's law.  <u>Roadway Package Sys., Inc. v. Kayser</u>, 257 F.3d 287, 288 (3d Cir. 2001).

       InterDigital and Federal agreed that the construction of the Reimbursement Agreement would be governed by Pennsylvania substantive law.  Reimbursement Agreement § 18.  Moreover, the parties specified that the arbitration called for in Section 6 would be pursuant to the Pennsylvania Uniform Arbitration Act ("PUAA").  <u>Id.</u> § 6(c)(ii).  Therefore, the Court applies

Pennsylvania law and the PUAA to the instant dispute.[2]

    B.   <u>Confirmation of Arbitration Award</u>

Federal moves for the confirmation of the arbitration award.[3]  In opposition, InterDigital moves the Court to vacate a portion of the award.  InterDigital argues that Judge Welsh exceeded the scope of her authority by fashioning an award pursuant to Sections 6(a)[4] and 6(c)[5] of the Reimbursement

---

[2]    The Court draws on cases applying the PUAA and the FAA because the statutes are virtually identical with respect to their provisions regarding vacating arbitration awards.  <u>See</u> <u>Roadway</u>, 257 F.3d at 292 n.2 (noting that standards for vacatur under the PUAA "parallel almost perfectly those of the FAA"); <u>compare</u> 42 Pa. Cons. Stat. Ann. § 7314(a) (governing vacatur in cases of statutory arbitration) <u>with</u> 9 U.S.C. § 10(a) (providing the FAA's vacatur standard).

[3]    The PUAA provides for the confirmation of arbitration awards.
> On application of a party, the court shall confirm an award, unless within the time limits imposed by this subchapter, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in section 7314 (relating to vacating award by court) or section 7315 (relating to modification or correction of award by court).

42 Pa. Cons. Stat. Ann. § 7313.

[4]    Section 6(a) of the Reimbursement Agreement provides:

In the event there is a court award, or a settlement with Ericsson, and there is not a separate amount reimbursing litigation expenses that results in complete reimbursement to Federal for all of the litigation expenses it paid to or on behalf of [InterDigital], [InterDigital] will pay to Federal, upon receipt of sums paid by Ericsson, the following:

                    (1). 9% of the first $50 million of the agreed-
                         upon settlement; and

                    (2). 10% of everything above $50 million of the
                         agreed-upon settlement for the Patents and
                         Claims in Suit.

Reimbursement Agreement at 3, InterDigital's Opposition and Mot.
to Vacate (doc. no. 43), ex. G ("R. Agmt.").

        [5]     Section 6(c)(ii) of the Reimbursement Agreement
provides:

        The 70% minimum set forth in c(i), above, and the 9%
        and 10% rates of reimbursement set forth in a(1) and
        a(2), above, will apply to all up-front payments and
        all recurring revenue payments by Ericsson (including,
        but not limited to, royalties and/or licensing fees),
        but will not apply to payments for engineering or other
        services, except as follows.  If it is reasonably
        projected that Federal will not be fully reimbursed
        within four (4) years from the date of the settlement
        based on the foregoing payments, Federal will also
        receive 1.5% of all payments made by Ericsson for
        engineering services.  If the combination of all of the
        foregoing is not reasonably projected to fully
        reimburse Federal within those four (4) years, Federal
        may, at its option, seek additional reimbursement from
        the Insureds during which time a representative of the
        Insureds and Federal, each of which having the
        authority to bind their respective entities, shall
        meet.  If the Insureds and Federal cannot agree on a
        resolution, the matter will be submitted to
        arbitration, pursuant to Pennsylvania's Uniform
        Arbitration Act, before a single arbitrator approved by
        Federal and the Insureds [InterDigital], for a
        determination of the additional value to the Insureds
        [InterDigital] and its affiliates of the settlement
        (beyond the cash payments related to the Patents and
        Claims in Suit and for engineering services) and a
        determination of the payments to be made to Federal
        based on such additional value of the settlement
        agreement, consistent with the reimbursement provisions
        set forth above.  The arbitrator shall be free to set
        the overall percentage of such agreement value to
        whatever value is deemed appropriate.  However, in no

Agreement, rather than pursuant only to Section 6(c).
InterDigital attacks Judge Welsh's decision that both 6(a) and
6(c) had been submitted to arbitration and that 6(c) required an
interpretation of 6(a).  Thus, InterDigital moves that the
portion of the award that is based on Section 6(a)
($14,675,656.00) be vacated.

The sole grounds for denying confirmation of an
arbitration award under the PUAA are: (1) there was fraud,
misconduct, corruption, or partiality by an arbitrator; (2) the
arbitrator exceeded her powers; (3) the arbitrator refused to
hear material evidence; or (4) there was no agreement to
arbitrate.  42 Pa. Cons. Stat. Ann. § 7314(a)(1)[6]; Hartford Ins.
Co. v. O'Mara, 907 A.2d 589, 593-94 (Pa. Super. 2006) (holding

---

event will the Insureds [InterDigital] be required to
reimburse Federal in an amount greater than the total
amount realized by the Insureds [InterDigital] from
Ericsson and in no event will the reimbursement to
Federal be less than the reimbursement set forth in
sub-paragraphs 6(a) and c(i) above.

R. Agmt. (emphasis added).

[6]    Pennsylvania provides for two different types of
arbitration, statutory or common law, with accompanying
frameworks for the review of challenges to arbitration awards.
42 Pa. C.S.A. § 7314, governing statutory arbitration, applies in
this case because the arbitration clause specifically states that
arbitration will be pursuant to the PUAA.  See 42 P.A. C.S.A. §
7302 (providing that arbitration conducted pursuant to a written
agreement that explicitly references the PUAA will be classified
as a statutory arbitration); cf. Runewicz v. Keystone Ins. Co.,
383 A.2d 189, 191 ("The Arbitration Act does not apply unless it
is expressly or impliedly provided for by the parties and its
procedures are followed.").

that section 7314 provides the only grounds for vacating an
arbitration award under PUAA).  Because the only ground
implicated in InterDigital's motion is the second, the Court
considers only whether Judge Welsh exceeded her power as
arbitrator when she fashioned the award.

"The determination of whether an arbitrator 'exceeded
[her] proper powers' depends upon whether the arbitrator decided
a dispute over which [s]he had no jurisdiction, or granted an
award which is prohibited by law." Leechburg Area Sch. Dist. v.
Leechburg Educ. Assn., 380 A.2d 1203, 1205 (Pa. 1977).  In
general, judicial review of arbitration awards is "extremely
deferential."[7]  Metromedia Energy, Inc. v. Enserch Energy Servs.,
Inc., 409 F.3d 574, 578 (3d Cir. 2005).  Moreover, "[a]rbitrators
have the authority in the first instance to interpret the scope

_____

[7]     "Limited judicial review is necessary to encourage the
use of arbitration as an alternative to formal litigation . . . .
A policy favoring arbitration would mean little, of course, if
arbitration were merely the prologue to prolonged litigation."
357 F.3d 272, 289 (3d Cir. 2004).  Thus, numerous courts have
recognized the extreme deference accorded to arbitration
decisions by reviewing courts.  E.g., Mut. Fire, Marine & Inland
Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989)
(reviewing arbitrator's decision to see if it "can be rationally
derived either from the agreement between the parties or from the
parties' submissions to the arbitrators"); Prostyakov v. Masco
Corp., 513 F.3d 716, 723 (7th Cir. 2008) (describing judicial
review for arbitrator's exceeding powers as "extremely limited":
court "will not set aside an arbitral award so long as the
arbitrator interpreted the parties' agreement at all"); Rich v.
Spartis, -- F.3d --, 2008 WL 343330, at *6 (2d Cir. Feb. 8, 2008)
("an arbitration award should be enforced, despite a court's
disagreement with it on the merits, if there is a barely
colorable justification for the outcome reached").

of the parties' submissions in order to identify the issues that
the parties intended to arbitrate." Id. at 579.  Courts
reviewing an arbitrator's determination of the scope of the
parties' submissions look to the record "as a whole" to determine
whether the arbitrator "could conclude [she] was empowered to
address" a particular issue.  Id. at 581-82.

     The Court will confirm Judge Welsh's opinion for three
reasons: first, the record as a whole supports Judge Welsh's
conclusion that the parties had submitted to her the issue of the
interpretation of section 6(a); second, the Court's independent
review of the language of the Reimbursement Agreement supports
Judge Welsh's determination of the scope of the arbitration;
third, even if Judge Welsh had lacked the authority to base the
award on section 6(a), Judge Welsh stated in an alternative
holding that the full amount of the arbitration award can be
supported by her interpretation of 6(c).

     1.   <u>The record as a whole</u>

     "[A]rbitration is a creature of contract . . . . [and]
'an arbitrator has the authority to decide only the issues
actually submitted' by the parties."  Metromedia, 409 F.3d at
578-79 (quoting Matteson v. Ryder Sys., Inc., 99 F.3d 108, 112-13
(3d Cir. 1996)).  "[I]t is the responsibility of the arbitrator
in the first instance to interpret the scope of the parties'
submission, but it is within the courts' province to review an

-9-

arbitrator's interpretation." Id. (internal quotation omitted); Commonwealth, Office of Admin. v. Commonwealth, Pa. Labor Relations Bd., 598 A.2d 1274, 1277 (Pa. 1991) ("existing Pennsylvania law and policy . . . requires that procedural questions and factual questions regarding the scope of matters to be resolved by arbitration . . . be determined by the arbitrator"). "[R]eview of the arbitrator's interpretation of the scope of a submission is highly deferential," however, "the courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." Metromedia, 409 F.3d at 578-79.

In Metromedia, the Third Circuit was asked to review an arbitration award because of a party's claim that the arbitration panel had exceeded the scope of its authority by deciding a particular issue.[8] Id. at 575. The Third Circuit considered

---

[8]    The Metromedia analysis is a post-arbitration review of the arbitrator's determination of the scope of the parties' submissions. This analysis differs from the analysis described in AT&T Technologies, Inc. v. Commc'ns Workers of America, which is a pre-arbitration determination of whether a dispute falls within the scope of an arbitration agreement. See 475 U.S. 643 (1986). In AT&T, the Court considered whether to order arbitration of a dispute pursuant to a collective-bargaining agreement. Both AT&T and Metromedia apply the fundamental principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 648 (internal quotation omitted). However, AT&T looks to whether an arbitration agreement "creates a duty for the parties to arbitrate the particular grievance," a question that "is undeniably an issue for judicial determination." Id. at 649. In this case, it is undisputed that the parties entered into a valid agreement to arbitrate. The Court has already ruled that the

-10-

whether "the record as a whole . . . [suggested that] the arbitration panel reasonably believed the parties had submitted to it [the issue]."  Id. at 581.  The court asked, first, whether the parties had submitted to the arbitrators "a single comprehensive document listing the precise issues that the arbitrators were being asked to resolve."  Id.  Because they had not submitted such a document, the court continued to consider additional factors such as whether the issue was listed in the Statement of Claims submitted to the arbitrators, whether testimony concerning the issue was introduced during the arbitration hearing, and whether the issue was addressed in the pre- and post-arbitration briefs of the parties.  Id. at 581-83. "[A]t the time the arbitration panel crafted its written opinion in support of its award, it was faced with a record in which one party had repeatedly presented evidence and arguments concerning the [issue] . . . and the other party had never objected to these arguments on the ground that this issue was beyond the scope of

---

dispute over reimbursement is arbitrable under the Reimbursement Agreement and neither party now contests that section 6(c) was properly before Judge Welsh during the arbitration.  Because it has already been determined that the agreement created a duty to arbitrate, the question is only whether Judge Welsh correctly decided the scope of the issue submitted for arbitration by the parties.  Although the initial question of arbitrability is for the court to determine, the subsequent question of the scope of the parties' submissions for arbitration is for the arbitrator to decide in the first instance.  Metromedia, 409 F.3d at 579.  The arbitrator's decision as to scope receives great deference from the reviewing court.  Id.

the panel's authority." Id. at 583.  Therefore, the Third
Circuit held that the arbitration panel had reasonably concluded
that it had the power to decide the issue.

The situation presented in this case is similar to that
in Metromedia in at least three ways.  First, InterDigital did
not object to the arbitrability of section 6(a) in its initial
opposition to the motion to compel arbitration filed by Federal.
In fact, in its brief opposing the motion to compel, InterDigital
objected to arbitration on the ground of timeliness, but never
argued that arbitration of section 6(a) was inappropriate under
the arbitration agreement.[9]

Second, InterDigital did not object to the
arbitrability of 6(a) in its initial submissions to Judge Welsh,
even though it was on notice that Federal sought the arbitration
of section 6(a).  In its Demand for Arbitration, Federal stated
that it sought "arbitration of all disputes and all of
[Federal's] lawful claims and demands under and pursuant to
Paragraphs 6(a)(1) and (2), 6(c)(i) and (ii), and any other
applicable terms of the Agreement."  Ex. A, Boehning Aff. II
(doc. no. 44).  It reiterated this demand in its Notice of Claims

---

[9]    Given the absence of any objection by InterDigital, the
Court noted in its opinion that the parties "agreed to arbitrate
disputes concerning the amount to be reimbursed to Federal by
InterDigital," InterDigital Commc'ns Corp., 392 F. Supp. 2d at
710, and did not draw any distinction between disputes under 6(a)
and disputes under 6(c).

and Remedies Sought.  Notice of Claims ¶ II.A.9, Ex. C, Boehning
Aff. II.

Instead of objecting to the arbitrability of 6(a),
InterDigital's response to Federal's notice addressed the merits
of Federal's arguments regarding sections 6(a) and 6(c).
Response to Notice of Claims and Remedies Sought, Ex. D, Boehning
Aff. II.  The response quoted section 6(a) extensively.  <u>E.g.</u>,
<u>id.</u> ¶¶ III.A.1, III.C.1.  InterDigital did raise some objections
to arbitration: the response objected to arbitration on the
grounds that a contractual condition precedent to arbitration was
a meeting between the parties' representatives that had not yet
taken place.  <u>Id.</u> ¶ IV.  However, the response never once
suggested that arbitration was inappropriate because section 6(a)
was not subject to arbitration under the terms of the
Reimbursement Agreement.

Third and finally, when InterDigital did object to the
arbitrability of 6(a), it still clearly manifested its intention
to submit the issue of arbitrability to Judge Welsh.  On the
first day of the arbitration hearing, counsel for both parties
addressed the question of whether 6(a) was arbitrable under the
terms of the Reimbursement Agreement.  Mr. Mathes, counsel for
InterDigital, argued that Judge Welsh ought not to address the
question of arbitrability until "after [she] ha[d] heard the
evidence and heard the witnesses and [was] prepared to determine

-13-

[the question of arbitrability]." Arb. Hr'g Tr. 13:15-17, March 14, 2007, Ex. E, Boehning Aff. Later, Mathes repeated "that the issue about what was arbitrable under 6(a) and 6(c) . . . is an issue that is best addressed after you, [Judge Welsh], have heard the testimony." Id. 15:23-16:8.

Mr. Mathes's statements demonstrate that, although InterDigital argued at the arbitration that 6(a) was not arbitrable, InterDigital's position was that the question of whether 6(a) was arbitrable was a question that itself was subject to arbitration. In other words, the question of whether or not 6(a) could be arbitrated was to be answered by Judge Welsh based on the evidence presented at the arbitration hearing.[10] InterDigital certainly did not argue that the arbitration should be stayed so that the court could determine whether or not 6(a) was arbitrable. Based on the written and oral submissions of InterDigital, Judge Welsh reasonably concluded that the arbitrability of 6(a) was a question within the scope of the issues submitted by the parties for arbitration. This conclusion is entitled to significant deference, Metromedia, 409 F.3d at

---

[10]    InterDigital now objects to the arbitration award because it believes that Judge Welsh misinterpreted the evidence and reached the wrong conclusion about the arbitrability of 6(a). InterDigital "attempt[s] . . . to characterize this as a situation where arbitrators exceeded their powers." Houston v. Nat'l Mut. Ins. Co., 518 A.2d 311, 313 (Pa. Super. 1986). However, "the essence of [its] claim is that the arbitrator[] did not interpret the [Reimbursement Agreement] correctly. The distinction is critical." Id.

579; nothing in the record suggests that it should be overturned.

    2.  <u>Scope of the Arbitration</u>

      Putting aside InterDigital's conduct during the arbitration, the Court examines the language of the Reimbursement Agreement and concludes that the Agreement supports Judge Welsh's conclusion that 6(a) is arbitrable.

      The language of the Reimbursement Agreement shows that, at the time of drafting, the parties intended to submit 6(a) to arbitration.  Although it is true that section 6(a) itself does not mention arbitration, the provisions of 6(a) are explicitly incorporated into 6(c)(ii) by its reference to "<u>the 9% and 10% rates of reimbursement set forth in a(1) and a(2)</u>, above."  6(c) further references 6(a) by providing that

> "<u>the matter will be submitted to arbitration</u> . . . for a determination of the additional value to the Insured . . . of the settlement . . . and a determination of the payments to be made to Federal based on such additional value of the settlement agreement, <u>consistent with the reimbursement provisions set forth above</u>. . . . [I]n no event will the reimbursement to Federal be less than the reimbursement set forth in sub-paragraphs <u>6(a) and c(i) above</u>."

      By including such a reference, the parties must have contemplated that any interpretation of section 6(c) would necessarily lead to an interpretation of section 6(a).  Without

-15-

interpreting 6(a), 6(c) would be left without substance.  Thus,
to fashion an award "consistent with the reimbursement provisions
set forth above" and to ensure that the reimbursement was not
less than "the reimbursement set forth in sub-paragraph[] 6(a),"
Judge Welsh could not avoid interpreting section 6(a).  See
McAlister v. Sentry Ins. Co., 958 F.2d 550, 553 (3d Cir. 1992)
("arbitrators normally have authority to decide all matters
necessary to dispose of a claim") (citing Brennan v. General
Accident Fire and Life Assurance Corp., 524 Pa. 542, 548-49
(1990)).

### 3.   Judge Welsh's alternative holding

Even if the Court disagreed with Judge Welsh's
conclusion that she had the authority to base the arbitration
award on 6(a), the award would still be upheld based on Judge
Welsh's alternative holding that the whole award could be based
on 6(c).  In her decision, Judge Welsh concluded that the amount
to be awarded to Federal pursuant to section 6(a) was arbitrable
and she awarded $14,958,298 to Federal pursuant to 6(a).
However, she stated that her "alternative finding" was that the
same sum could be awarded "under 6(c)."  Arb. Hr'g Tr. 984:21.
Because 6(c) incorporates the formula set forth in 6(a), Judge
Welsh stated that, if she had not based part of the award on
section 6(a), she would have "appl[ied] the percentages from

-16-

6(a)" in calculating the award under 6(c) and would have awarded Federal the same sum of money.  Id. 984:22-23.

The parties do not dispute that the amount to be awarded Federal under section 6(c) was subject to arbitration. Under Judge Welsh's alternative holding, the entire award can be justified by Judge Welsh's interpretation of section 6(c).  Any challenge to the alternative holding would simply be an argument that Judge Welsh erred in interpreting 6(c).  "[M]erely misinterpreting a clause in an agreement does not . . . rise to the level of exceeding arbitrators' powers." Aetna Cas. & Sur. Co. v. Deitrich, 803 F. Supp. 1032, 1038 (M.D. Pa. 1992); id. ("the arbitrator is the final judge of both law and fact, and so mistake of either does not require vacating the judgment") (citing Elkins & Co. v. Suplee, 538 A.2d 883, 806 (Pa. Super. Ct. 1988); Hassler v. Columbia Gas Transmission Corp., 464 A.2d 1354, 1356 (Pa. Super. Ct. 1983)).

"The question for . . . [a] court asked to set aside an arbitration award . . . is not whether the arbitrator . . . erred in interpreting the contract; it is not whether [she] clearly erred in interpreting the contract; it is not whether [she] grossly erred in interpreting the contract; it is whether [she] interpreted the contract."  Prostyakov v. Masco Corp., 513 F.3d 716, 726 (7th Cir. 2008).  Any challenge to Judge Welsh's interpretation of 6(c) in the alternative holding must fail

-17-

because the challenge would claim only that Judge Welsh
misinterpreted the agreement, which does not rise to the level of
exceeding an arbitrator's power.  Aetna, 803 F. Supp. at 1038.
Even if the decision were incorrect, as claimed by InterDigital,
the arbitration award would be confirmed on the basis of Judge
Welsh's alternative holding.

* * * * * *

InterDigital's motion to vacate the arbitration award
on the grounds that Judge Welsh exceeded the scope of her
authority will be denied.  The record as a whole reveals that the
parties submitted the interpretation of 6(a) to Judge Welsh
during the arbitration.  Moreover, the language of the
arbitration agreement supports the conclusion that 6(a) was
within the scope of the arbitration.  Finally, even if 6(a) were
not within the scope of the arbitration, Judge Welsh's
alternative holding–that the entire award could be based on
Section 6(c)–would be confirmed.


C.    InterDigital's Recoupment Defense

InterDigital also argues that it is entitled to
withhold at least some portion of the award under the doctrine of
equitable recoupment.  It requests that the Court stay the
confirmation of the award pending the adjudication of its
recoupment defense.

-18-

Equitable recoupment is the common law right of a defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against plaintiff arising out of the very contract giving rise to plaintiff's claim.  See 6 Wright & Miller, Federal Practice and Procedure Civil 2d § 1401 (1990).  Pennsylvania has adopted the common law doctrine of equitable recoupment, which allows "a defendant to reduce the award obtained by a plaintiff if the defendant has a counterclaim that relates to the particular transaction that is the subject of the litigation commenced by plaintiff, notwithstanding the fact that the defendant failed to assert his counterclaim before the statute of limitations had run."  Stulz v. Boswell, 453 A.2d 1006, 1009 (Pa. Super. 1982).

InterDigital argues that it is entitled to recoupment because Federal acted in bad faith and breached its contractual duty to InterDigital by withholding payment of attorneys' fees in the litigation between InterDigital and Ericsson.  InterDigital contends that Federal, unhappy with the large amount of attorney's fees it was expending in the defense of the Ericsson litigation and knowing that it would be extremely difficult for InterDigital to defend itself without Federal paying its attorney's fees, coerced InterDigital into the Reimbursement Agreement.  InterDigital argues that, to carry out this coercion, Federal stopped payments to InterDigital for six months until

-19-

InterDigital agreed to enter into the Reimbursement Agreement.

InterDigital further argues that Federal breached its fiduciary obligation to its insured by permitting the claims adjuster working on InterDigital's claim to negotiate the Reimbursement Agreement while also working on the claim.  This, they contend, put the claims adjuster in the conflicting positions of fiduciary and adversary of InterDigital. InterDigital asserts that this breach of fiduciary duty, plus the breach of contractual duty described above, provides InterDigital with a defense to Federal's claim for reimbursement.

A new defense, interjected at this late stage, is not a ground for relief from the arbitration award under the PUAA.  See 42 Pa. Cons. Stat. Ann. § 7314 (giving the only grounds for modifying or vacating the award in a statutory arbitration). Moreover, while recoupment as a defense is not subject to the statute of limitations, see Kline v. Blue Shield of Pa., 556 A.2d 1365, 1368-69 (Pa. Super. 1989), it is nevertheless an affirmative defense that, if not timely raised, may be waived. See In re Trans World Airlines, Inc., 322 F.3d 283, 289 (3d Cir. 2003) (holding equitable recoupment is affirmative defense); Williams v. Runyon, 130 F.3d 568, 573-74 (3d Cir. 1997) (holding affirmative defense is waived if party waits until after trial to raise it); Int'l Molders & Allied Workers Union, Local No. 1 v. Eastern Non-Ferrous Foundry, Inc., Civ. A. No. 85-1054, 1985 WL

-20-

4966, at *1 (E.D. Pa. Dec. 17, 1985) ("In an action to enforce or vacate an arbitration award, a party may not assert a defense on the merits that was not submitted to the arbitrator.") (citing United Steelworkers of Am. v. American Smelting and Ref. Co., 648 F.2d 863 (3rd Cir. 1981)).

The question of whether the defense has been waived implicates the question of the scope of the arbitrable dispute and, like earlier questions of scope, is governed by the PUAA. If Interdigital's recoupment defense formed part of the arbitrable controversy, it should have been submitted to the arbitrator.

Defenses relating to the merits of the claim are part of the arbitrable controversy and must be decided by the arbitrator. See Messa v. State Farm Ins. Co., 641 A.2d 1167, 1170 (Pa. Super. 1994) (holding that, once the court determines that valid arbitration agreement exists, "it is for the arbitrators to rule on the merits of the parties' claims and defenses."); Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135-36 (2d Cir. 1996) (holding that a legal defense to a claim "is itself a component of the dispute on the merits" and should be resolved by the arbitrator when the arbitrator resolves the claim); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1132 (9th Cir. 2000); Port Erie Plastics, Inc. v. Uptown Nails, LLC, 350 F. Supp. 2d 659, 665 (W.D. Pa. 2004).

Because InterDigital's defense of equitable recoupment is tied directly to the merits of Federal's claim and to the validity of the Reimbursement Agreement, even assuming InterDigital has a valid defense in the doctrine of equitable recoupment, it has waived it by failing to timely raise it before the arbitrator.[11]

V.   CONCLUSION

For the aforementioned reasons, Federal's motion to confirm the arbitration award will be granted and InterDigital's motion to stay confirmation of the award will be denied.

An appropriate order follows.

---

[11]    Finally, even if InterDigital's defense had not been waived, it would be rejected because the Court has already dismissed InterDigital's claims of bad faith and breach of contract.  InterDigital Commc'ns, 392 F. Supp. 2d at 709 n.1. Under the "law of the case" doctrine, courts refrain from revisiting issues that were decided earlier in the case in the absence of extraordinary circumstances, none of which are present here.  See Public Interest Research Group of N.J. v. Magnesium Elektron, Inc., 123 F.3d 111, 166 (3d Cir. 1997).  The Court's prior opinion does not specifically address InterDigital's argument regarding the role of the claims adjuster, however, in any event, InterDigital waived this argument by failing to raise it before Judge Welsh.  See supra.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INTERDIGITAL COMMUNICATIONS    :    CIVIL ACTION
CORP. ET AL.,                  :    NO. 03-6082
                               :
        Plaintiff,             :
                               :
            v.                 :
                               :
FEDERAL INSURANCE COMPANY,     :
                               :
        Defendant.             :


**O R D E R**

AND NOW, this **20th day** of **March 2008**, in accordance with the Memorandum issued on this date, it is hereby **ORDERED** that Federal's Motion to Lift the Stay and to Confirm the Arbitration Award (doc. no. 39) is **GRANTED.**

It is further **ORDERED** that InterDigital's Cross-Motion to Vacate the Arbitration Award and to Stay Confirmation of the Award Pending Adjudication of InterDigital's Recoupment Defense (doc. no. 43) is **DENIED.**

It is further **ORDERED** that InterDigital's unopposed motion to maintain the confidentiality of the arbitration proceedings (doc. no. 49) is **GRANTED.**[12]

_____

[12]    In a letter dated June 6, 2007, Federal's counsel advised the Court that the parties disagreed as to the propriety of maintaining the confidentiality of the arbitration proceedings.  The letter stated that the parties intended to resolve the dispute "by seeking a ruling on the issue from Judge

**AND IT IS SO ORDERED.**

S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**

---

Welsh," the court-appointed arbitrator in this case.  Judge Welsh
ruled that the proceedings should remain confidential.  Ex. B,
Boehning Aff. (doc. no. 44).  No challenge to Judge Welsh's
decision has been filed; therefore, the Court will grant
InterDigital's motion to maintain confidentiality.